BROWN, Collector of Internal Revenue, et al. v. FOSTER et al.

(Circuit Court of Appeals, Fourth Circuit. February 14, 1912.)

No. 1,042.

INTERNAL REVENUE (§ 24*)—COMMISSIONER OF INTERNAL REVENUE—DISCRETION—BONDS.

Exercise by the Commissioner of Internal Revenue of his discretion under Rev. St. § 3293 (U. S. Comp. St. 1901, p. 2133), to require a new warehousing bond, should not be disturbed by the courts, where the principal obligor departed from the country, the liquor had been seized for violation of the revenue laws and was declared forfeited and then released to a person other than the original distiller, and the surety on the original bonds notified the Commissioner that it was no longer bound.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 68–71; Dec. Dig. § 24.*]

Pritchard, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

Bill by D. C. Foster and another against George H. Brown, Collector of Internal Revenue, and another. Judgment for plaintiffs, and defendants appeal. Reversed.

A. E. Holton, U. S. Atty. (A. L. Coble, Asst. U. S. Atty., on the brief), for appellant Brown.

George S. Bradshaw (C. E. McLean, on the brief), for appellant United States Fidelity & Guaranty Co.

William P. Bynum and R. C. Strudwick, for appellees.

Before PRITCHARD, Circuit Judge, and McDOWELL and SMITH, District Judges.

SMITH, District Judge. In the year 1905, and up to January 1, 1906, one Dart C. Foster, a distiller in the Western district of North Carolina, gave bonds under section 3292, U. S. Rev. Stats. (U. S.

Comp. St. 1901, p. 2132), with penalties in the aggregate of $41,400 to the United States for the payment of the taxes due upon certain whisky to be paid within eight years from and after the entry of the whisky in the bonded warehouse, i. e., until the year 1913. His surety upon the bond was the United States Fidelity & Guaranty Company, and the premium on the bonds to the surety company appears to have been paid in full. Thereafter Foster transferred all his interest in the whisky to the complainant N. Glen Williams, and departed from the country, and became a citizen of and was, at the time of the action by the Commissioner of Internal Revenue hereinafter mentioned, residing in the Republic of Mexico. In April, 1910, the whisky referred to was, after due legal proceedings, adjudged forfeited to the United States for alleged violations of the internal revenue law, and judgment was rendered for the value of the same in excess of the taxes due the government of the United States, and thereafter the whisky was restored or released to the owner, N. Glen Williams, upon his executing to the United States a bond for the value of the whisky in excess of the tax. The surety on the warehousing bonds then gave notice to the Commissioner of Internal Revenue that it would contest any claim that its liability as surety on the bond continued after such forfeiture and release, and in view of the complication that had arisen in the case, especially the seizure and release and the notice from the surety, the commissioner concluded that a new bond should be given under the provisions of section 3293 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2133), and the complainant N. Glen Williams having failed to give a new bond when required so to do, the Commissioner proceeded to collect the tax by distraint, and advertised the whisky for sale. The proceeding in this case was brought to enjoin the sale as threatened to be made by the Commissioner. The trial judge below held that the United States had entered into a contract with the distiller, by which the latter was given eight years in which to pay the internal revenue tax on the distilled spirits in the warehouse, and that in reliance upon that contract the distiller had paid the premium for the whole eight years to the indemnity company. The court further held that under the provisions of section 3293 a new bond should be required in case of death, insolvency, or removal of either of the sureties, and could be required in any other contingency affecting its validity or impairing its efficiency, at the discretion of the Commissioner of Internal Revenue; but that inasmuch as there was no death, insolvency, or removal of the surety herein, the Commissioner could only require a new bond in a contingency affecting its validity or impairing its efficiency, and that nothing appeared in this case which either affected the validity or impaired the efficiency of the bond, and that the discretion given to the Commissioner of Internal Revenue was not one that he could exercise in a case in which the court should hold as a judicial matter that a contingency had not arisen affecting the validity, or impairing the efficiency of the bond.

The principal question here is whether this power lodged in the Commissioner of Internal Revenue was one which so far rests in his

discretion as that the court could review his action in a case in which it is not alleged or proven that any ulterior purpose existed, or there has been any improper abuse of the discretion lodged in him. The deposit of the spirits in the warehouse and the extension of the time for the payment of taxes is solely for the benefit of the distiller, and to enable him to give bond for the payment of the tax instead of paying the tax at once. U. S. v. Witten, 143 U. S. 76, 12 Sup. Ct. 372, 36 L. Ed. 81. Except for this privilege given to him, the government could call upon him to pay the tax at once. In the opinion of this court the facts in this case are not sufficient to allow the court to interfere with the discretion lodged in the Commissioner of Internal Revenue. Where Congress has committed to the head of a department certain duties requiring the exercise of judgment and discretion, his action thereon, whether it involve questions of law or fact, will not be reviewed by the courts unless he has exceeded his authority, or this court should be of opinion that his action was clearly wrong. Whether such decision is right or wrong, is not the question. "Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction." Bates & Guild Company v. Payne, 194 U. S. 106, 109, 24 Sup. Ct. 595, 597 (48 L. Ed. 894). In that case the Supreme Court ruled as follows:

"The rule upon this subject may be summarized as follows: That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing."

In Public Clearing House v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092, the court held, in referring to the case of School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90, that it was within the power of Congress to intrust the Postmaster General with the power to seize and detain letters upon evidence satisfactory to himself, and that his action will not be reviewed by the court in doubtful cases, and, again (194 U. S. 515, 24 Sup. Ct. 796, 48 L. Ed. 1092), also referring to the McAnnulty Case:

"That the party injured has a right to invoke the judicial power of the government, whenever his property rights have been invaded by the exercise of such power, was settled by this court in Noble v. Union River Logging Railroad, 147 U. S. 165 [13 Sup. Ct. 271, 37 L. Ed. 123], as well as in the McAnnulty Case. But, as already indicated, it would practically arrest the executive arm of the government if the heads of departments were required to obtain the sanction of the courts upon the multifarious questions arising in their departments before action were taken in any matter which might involve the temporary disposition of private property."

In the case at bar, not only the principal obligor of the bond departed from the jurisdiction and became a citizen of a foreign country, but the liquor in question had been seized by the government upon an information for an infraction of the internal revenue laws; had been actually adjudged forfeited, and then released to a different party than

the original distiller, and the surety on the bonds had notified the Commissioner that it was no longer bound on his bond. In view of these complications, the Commissioner of Internal Revenue, in the exercise of the discretion vested in him by the terms of the statute, required a new bond, and it does not appear to this court that the exercise of his discretion was so palpably wrong, and such an invasion of the property rights of the complainant, as to require an interference by a court with the action of the Commissioner of Internal Revenue. Whilst an ultimate recourse to the judiciary may be reserved in all cases where the action of the officer is an invasion of property rights and is in excess of his authority, or palpably and clearly erroneous, or an abuse of the discretion lodged in him, yet the case at bar does not come within these categories.

It follows from this conclusion that the judge below erred in sustaining the bill upon the facts found, and that his judgment must be reversed.

Reversed.

PRITCHARD, Circuit Judge, dissents.