## HARKINS et al. v. WILLIARD.

### (Circuit Court of Appeals, Fourth Circuit, July 10, 1906.)

### No. 653

1. INTERNAL REVENUE—VIOLATION OF LAW—FORFEITURE OF SPIRITS—STAMPS.
   Rev. St. § 3334 [U. S. Comp. St. 1901, p. 2183], declares that all distilled spirits forfeited to the United States, sold by order of court, or under process of distraint, shall be sold subject to tax, and the purchaser shall immediately, and before he takes possession, pay the tax thereon ; that, if any tax-paid stamps are affixed to any cask or package so condemned, the stamps shall be obliterated and destroyed before sale. *Held* that, where stamped liquors were forfeited for a violation of the internal revenue law, the forfeiture included the stamps as well as the property.

2. SAME—SALE OF PROPERTY—APPLICATION OF PROCEEDS.
   The proceeds of a sale of spirits forfeited to the United States for violation of the internal revenue law belong exclusively to the government, and cannot be applied to the payment of the tax thereon.

3. SAME.
   Distilled spirits are subject to forfeiture for misconduct of the distiller, even though the tax on the same may have been paid in full.

4. SAME—SALE OF UNSTAMPED SPIRITS—FORFEITURE—PURCHASE OF STAMPS BY BUYER—REDEMPTION.
   A distiller sold certain casks of unstamped spirits to plaintiff, which were then in the government warehouse, and on March 10, 1902, plaintiff paid the tax on the spirits, but before the attachment of stamps the spirits were seized on the same day for violation of the internal

revenue law by the distiller, discovered March 4, 1902, after which the spirits were forfeited to the government and sold. *Held*, that as Act Aug. 27, 1894, c. 349, § 48, 28 Stat. 563 [U. S. Comp. St. 1901, p. 2109], requires the payment of the tax by the distiller and the issuance of stamps to him, plaintiff was not entitled to recover from the United States the internal revenue tax so paid.

In Error to the Circuit Court of the United States for the Western District of North Carolina, at Greensboro.

James J. Britt, Asst. U. S. Atty. (A. E. Holton, on brief), for plaintiffs in error.

J. E. Alexander, for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

PRITCHARD, Circuit Judge. This case arose from the seizure by H. S. Harkins, collector of internal revenue, Fifth district of North Carolina, on March 10, 1902, of three packages of spirits as forfeited to the United States for violation of the internal revenue laws, at grain distillery No. 651, of C. S. Pitts, Winston-Salem, N. C. Tax on these spirits, amounting to $127.16, was paid March 10, 1902, but spirits were seized same day before attachment of stamps. Seizure was made for violations discovered March 4, 1902. Defendant in error, Williard, loaned distiller Pitts the tax money, purchased the stamps himself, but they were issued in the name of Pitts, the distiller, and was to have spirits when withdrawn in payment of a debt owed by Pitts. Pitts died in July, 1902, intestate, and no administrator was ever appointed. Unattached stamps remained in the hands of Williard, and in January, 1903, he made application to the commissioner of internal revenue for their redemption, which application was rejected for several reasons, the principal one of which was that Williard was not a proper party in interest. Suit was then brought in the state court and removed to the Circuit Court of the United States at Greensboro, and at April term, 1905, a judgment for $127.16 with interest was obtained.

Upon the foregoing facts the court below charged the jury, among other things, as follows:

"(1) It appears in this case, from undisputed evidence, that $127.16 was paid by Mr. Williard to the defendants. As this was Mr. Williard's money, he is the real party in interest, and is entitled to maintain the action.

"(2) In no view of the case was it right or lawful to receive money from Mr. Williard in payment of the taxes due on property already forfeited. The government had no right to receive this money after the forfeiture of the property."

It is contended by the plaintiff in error that the court erred in submitting these instructions to the jury, and that the same were not warranted by the law governing this case.

In order to correctly determine the merits of this controversy, it is necessary to decide whether the plaintiff below had the right to institute an action against the collector of internal revenue for money which he had paid for the distiller Pitts as tax due the government on certain casks of spirits. Prior to 1894, the law in relation to taxes

on distilled spirits was as follows: "That the distiller, owner or person having possession" of the spirits could pay the tax on the same. On that date, however (Act. Aug. 27, 1894, c. 349, § 18, 28 Stat. 563 [U. S. Comp. St. 1901, p. 2109]), the law was so amended so as to read:

"That the tax herein imposed shall be paid by the distiller of the spirits on or before their removal from the distillery or place of storage, except in case of removal therefrom without payment of tax as provided by law."

The statute as amended clearly limits the payment of tax and the receipt of the stamps therefor to the distiller and contains no provision which authorizes the recognition of any other person for that purpose. The stamps that were issued to the distiller were only evidence of the fact that the tax had been paid, and, inasmuch as the spirits had passed into the possession of the government as forfeited property, the fact that they were not attached to the casks can have no bearing upon the questions involved herein. Where taxes are paid and stamps are attached to casks of spirits in case of forfeiture, both stamps and tax (for which stamps are receipts) are forfeited.

Section 3334 of the Revised Statutes [U. S. Comp. St. 1901, p. 2183], which relates to this subject, reads as follows:

"All distilled spirits forfeited to the United States, sold by order of court, or under process of distraint, shall be sold subject to tax; and the purchaser shall immediately, and before he takes possession of said spirits, pay the tax thereon. And any distilled spirits heretofore condemned, and now in the possession of the United States, shall be sold as herein provided. If any tax-paid stamps are affixed to any cask or package so condemned, such stamps shall be obliterated and destroyed by the collector or marshal after forfeiture, and before such sale."

Thus it will be seen that the law provides for the forfeiture of the stamps as well as the property, and requires the destruction of the stamps which were originally attached thereto as evidence of the payment of the tax. It also requires the purchaser at the sale to pay the taxes and affix stamps thereto in order to authorize the removal of the spirits. If the taxes are paid at the time of forfeiture, then the government has no further claim against the distiller for taxes, but the proceeds of a sale of property thus forfeited to the government on account of violations of the internal revenue laws belongs exclusively to the government and cannot be applied to the payment of tax. For instance, forfeited spirits, tax-paid or otherwise, in case of forfeiture and sale, belong to the government, and even though there should be an excess arising from such sale, if the tax on the property forfeited has not been paid, the distiller and the sureties are liable for the tax. In the case of United States v. United States Fidelity & Guaranty Co. (D. C.) 144 Fed. 866, Judge Platt held that the proceeds of forfeited spirits could not be applied to the payment of taxes thereon; that if taxes are paid both spirits and taxes are forfeited, and the sureties on the distiller's bond were liable for all taxes aside from the forfeiture. The court said:

"If the distiller had paid the taxes, the liquor would have been forfeited, tax and all. The property has disappeared under the forfeiture, but the taxes remain unpaid, and the sureties are responsible. It is not thought

that the lien upon the property can be said to continue upon the proceeds after the property has been forfeited and sold."

Primarily the distiller is liable for the taxes due on the spirits distilled, and, in case of default, his sureties are also jointly liable for the same. Nevertheless, in that event the tax must be paid in the name of the distiller, and the stamp, which is in the nature of a receipt, can only be issued to him.

In pursuance of the provision of the law in regard to the payment of taxes by the distiller, the defendant in error paid the tax in question on the 10th day of March, 1902, but before the stamps were attached to the packages by the gauger, as required by law, all of the casks of spirits were seized on account of violations of the internal revenue laws which had been discovered on the 4th day of March, 1902. The payment of the tax under these circumstances by the defendant in error was as much the act of the distiller as if he had in person handed the money to the collector. This is true because the law provides that only the distiller shall have the right to pay the tax on distilled spirits. Therefore, when the defendant in error paid the tax, he acted as the agent of the distiller, and the fact that the receipts for the amount paid were issued in the name of the distiller clearly negatives the contention that the defendant in error had any lawful claim to the same.

A careful reading of the debates in Congress at the time the amendment of August 28, 1894, was under consideration, shows that it was the purpose of Congress to limit the payment of taxes exclusively to the distiller in order to avoid multiplicity of claimants in case of controversy between the government and the distiller as to the payment of taxes. After a thorough consideration of the matter, it was deemed best to limit the payment of taxes to the distiller alone, and by doing so the right to contest the payment of taxes which might be deemed to be improper is reserved to the distiller only; while, on the other hand, the statute renders it impossible for claimants, other than the distiller, to present their claims before the commissioner of internal revenue, thus eliminating the consideration of questions which were never intended to be settled by that official. Congress has wisely provided that, where a controversy shall arise as to the payment of taxes, only the distiller shall have the right to apply to the Commissioner of Internal Revenue for a settlement of the same, and, if there are claimants other than the distiller, the controversies as to their rights must be settled in the proper forum in the same manner as the title to property is determined between individuals.

Distilled spirits are liable to forfeiture on account of the acts of the distiller, even though the tax upon the same may have been paid in full. In this instance it appears that the premises of the distiller, together with all the spirits and other property therein, were forfeited to the government on account of the misconduct of the distiller and the packages claimed by the defendant in error were seized on account of such violations and forfeited to the government while in the possession of the distiller, Pitts. Therefore, even though the stamps had been attached to the casks upon which the tax was paid, they

would have been forfeited to the government as completely as though no stamps had been attached thereto and the tax had not been paid by any one. Under such circumstances, the distiller, Pitts, or his personal representative, could, upon a proper showing, have asked the government to refund any amount shown to have been improperly paid; but this is a right which the distiller and his personal representative possess, and no one else is permitted by law to institute proceedings of this character before the commissioner of internal revenue. The claim of the defendant in error is to the effect that, some time prior to the seizure of the distillery, the distiller, Pitts, became indebted to him, and agreed to sell to him certain packages of unstamped whisky which were then in the distillery warehouse and in the possession of the government. He does not undertake to say that the possession of the whisky was delivered to him in pursuance of an agreement made with the distiller, and, if he were to make such a contention, it would be untenable because the spirits were in the possession of the government, subject to a lien that was paramount to all other liens, and the distiller was powerless to make any delivery of the spirits held by the government until he had paid the tax and the same had been duly stamped and marked by the gauger and delivered to him. To hold otherwise would be to render uncertain the security of the government for its taxes and to defeat the very purpose of the internal revenue laws, to wit, the collection of taxes due upon distilled spirits manufactured under the supervision and control of the government. The distiller undoubtedly had the right to contract for the sale of the spirits while in the warehouse, but he could only do so, subject to the lien of the government for its taxes, and for penalties incurred and fines imposed for violations of the internal revenue laws; but it is admitted that this property was forfeited to the government before the stamps had been attached to the casks in question, and therefore the defendant in error did not possess the right to enforce his claim against the property at the time of the seizure, and this of itself is sufficient to show that the claim which he now seeks to enforce is unfounded. "Tax-paid spirit stamps," as they are technically called, are nothing more than receipts authorized to be issued by the government to indicate the payment of taxes on distilled spirits, and under the law as amended can only be issued to the distiller and are therefore without value, except for the purpose for which the same are issued, and that purpose can be ascertained by an inspection of the stamps. Under these circumstances, such stamps do not constitute the basis for an action against the government in the hands of one to whom they were not issued and who does not sustain the relation of a distiller to the government. Therefore these receipts, being issued to the distiller Pitts, do not constitute such a claim against the government in the hands of the defendant in error as entitles him to bring his action against the collector of internal revenue for the purpose of collecting the sum involved therein.

The contention that the government has no right to receive money in payment of taxes due on property forfeited cannot be sustained. From the very nature of the contract entered into between the distiller

and the government the taxes remain due until paid, and it was therefore the duty of the collector of internal revenue to receive the same at any time, either before or after the property had been forfeited, because the liability assumed by the distiller and his sureties continues to exist until the taxes are paid and could only be extinguished by the payment of such taxes as were shown to be due by the distiller to the government, and the payment of the same must necessarily be treated as an effort on the part of the distiller to comply with the requirements of the obligations which he assumed at the time he was granted authority to operate his distillery.

There is no view of this case in which the government would be liable to the defendant in error. There is not a scintilla of proof to show that the government entered into a contract with the defendant in error in regard to the payment of the tax, upon which this action is instituted; nor is there any evidence to show that the government ratified or in any way acquiesced in the alleged sale of the packages in question to the defendant in error. Such being the case, the only remedy left the defendant in error is to sue the representative of Pitts for the sum which he paid the collector of internal revenue on account of taxes due as aforesaid.

We are of opinion that the court erred in its instructions to the jury. Therefore the judgment of the Circuit Court is reversed, and a new trial granted. The case is remanded, to the end that further proceedings may be had in conformity with the views herein expressed.

Reversed.